**HAMPTON et al.**
v.
**UNITED STATES.**
No. 1017.

United States District Court
D. Nevada.
April 29, 1954.

Leslie B. Gray, Harlan L. Heward, Reno, Nev., for plaintiff.

James W. Johnson, Jr., U. S. Atty., Reno, Nev., William P. Compton, Asst. U. S. Atty., Las Vegas, Nev., for defendant.

FOLEY, District Judge.

The 25-month old daughter of the plaintiffs died as a result of injuries sustained when she was struck by a United States Navy pickup truck at Babbitt, Nevada, on the morning of January 30, 1952. Plaintiffs, the parents of the child, instituted this action against the defendant United States of America pursuant to the provisions of the Tort Claims Act, Sections 1346(b), 2671–2680, 28 U.S.C.A.

No one saw this unfortunate accident except perhaps William Lunsford, the driver of the truck, who was not called upon to testify at the trial. At the pretrial conference it was admitted that said Lunsford, at the time of the accident, was in the employ of the United States Navy and then engaged in the scope of his employment. Negligence is charged and denied. The rule of res ipsa loquitur is invoked.

The factual situation here is similar to that in Larson v. Loucks, 69 S.D. 60, 6 N.W.2d 436, 438. One feature, however, distinguishes the cases. There the driver of the vehicle testified that both before and after entering the car, and before starting it, he looked to the front but did not see anyone in the yard and started the car slowly. The South Dakota Supreme Court, in considering the doctrine of res ipsa loquitur, quoted from 38 Am.Jur. 998 as follows:

" 'The doctrine should not be employed for the purpose of creating negligence since it is not so positive as to convert into negligence that which is due care except for the rule. * * * It is only where the existence of negligence is a more reasonable deduction from the facts shown that a plaintiff is permitted to call this rule to his aid.' "

The facts in the Larson case as shown by the testimony of the driver indicate the exercise of due care. There is no testimony in this record that due care was exercised. Therefore, application of the res ipsa loquitur doctrine here would not tend to convert into negligence that which is due care.

In Las Vegas Hospital Ass'n v. Gaffney, 64 Nev. 225, 180 P.2d 594, 598, plaintiff relied upon the doctrine of res ipsa loquitur. Justice Badt, speaking for the Supreme Court of Nevada, quoted as follows:

" 'While the mere fact of an injury will not give rise to a presump-

tion of negligence on the part of anyone, under the doctrine of res ipsa loquitur, an expression which means, literally, the transaction speaks for itself, the facts or circumstances accompanying an injury may be such as to raise a presumption, or at least permit an inference, of negligence on the part of the defendant. The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or, as sometimes stated by the courts, reasonable evidence, in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care. * * *' ''

■ Here the thing which caused the injury to plaintiffs' child was under the control and management of the defendant and the occurrence was such as in the ordinary course of things would not happen if the defendant, or its employee, had used proper care. There being no explanation, we must infer that the injury and its consequences were the result of defendant's want of care.

Defendant United States contends that the doctrine cannot be applied here for the reason that plaintiffs in their complaint explain the cause of the accident. The basis of defendant's contention is that plaintiffs, instead of relying upon general allegations of negligence, alleged negligence specifically in their complaint. Defendant relies upon the Nevada case of Austin v. Dilday, 55 Nev. 357, 362, 34 P.2d 1073, 36 P.2d 359. Plaintiffs' answer to the contention is that the complaint here charges negligence both generally and specially as did the complaint in Bandy v. United States, D.C., 92 F.Supp. 360. It does not appear

from the complaint here as clearly as it did from the complaint in the Bandy case that negligence was pleaded both generally and specially, but the doctrine may be applied here regardless of the form of pleading.

It is apparent that plaintiffs' case was presented on the theory that no explanation of the child's injury was obtainable without invocation of the doctrine res ipsa loquitur. Plaintiffs offered no testimony tending to explain the unfortunate occurrence. From the circumstances shown by the evidence, no explanation of the accident could be given without the testimony of defendant's employee, William Lunsford, the driver of the vehicle, and it may very well be that he could not have explained the accident.

■ Defendant did not call the driver, its employee, as a witness and there is nothing in the record to show that Lunsford's presence at the trial could not have been obtained by the exercise of diligence on the part of defendant. It is to be assumed that the defendant United States had means at its disposal of ascertaining the whereabouts of a person engaged in service in one of its own departments or agencies. A subpoena was issued by the Clerk of this Court at the request of defendant November 30, 1953, directing William O. Lunsford to appear on the date of the trial, December 3, 1953, to testify in the action. The return showed nonservice for the reason, "Subject in U. S. Navy—location unknown." It may be inferred that the testimony of William Lunsford would have been unfavorable to the defendant if he had testified.

To go along with the defendant's contention here that the doctrine res ipsa loquitur cannot apply for the sole reason that plaintiffs may have pleaded negligence specifically would be allowing the defendant United States to profit by its lack of diligence in its effort to produce one who was, at all times pertinent here, under its control as an employee or member of the United States Navy.

The case was tried and presented on the only theory upon which plaintiffs could hope to recover. From the evidence in this record, it is apparent that from the very moment of the striking of the child, no explanation of the accident could come from any source other than that of the defendant. The pleaders' attempt to explain the cause of the accident was mere conjecture. If plaintiffs are entitled to recover here, that right to recover did not stem from the pleading. It arose entirely from the circumstances surrounding the accident and existing prior to the framing of the complaint. The right plaintiffs may have to recover is not to be frittered away by an extremely technical rule of pleading. The Federal Rules of Civil Procedure, 28 U.S.C.A., were intended to prevent such injustice to litigants. With this view, Judge Bright of the Southern District of New York seems to agree. In McGhee v. United States, D.C., 75 F. Supp. 76, on page 83, he states:

"(9) Respondent suggests that this rule [res ipsa loquitur] does not apply where there is a specific pleading and proof of negligence. The cases which it cites do not, in my opinion, apply here since the enactment of Rule 8, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c."

In Zumwalt v. Gardner, 8 Cir., 160 F.2d 298, 301, Circuit Judge Gardner, in writing for the Court, said:

"(3, 4) * * * The important, if not the controlling, question in this case arises with reference to the applicability of the res ipsa loquitur rule. Proof of the sudden jarring or jerking of the engine would under the circumstances disclosed present, we think, a proper case for the application of the doctrine. The engine was under the control and management of the defendant, and the occurrence as testified to by the plaintiff at least was such as in the ordinary course of things would not have happened if those who had the engine in control or management had used proper care, and if the engine

had been in proper repair. * * * May Department Stores Co. v. Bell, 8 Cir., 61 F.2d 830, 840. Since this action is based on the Federal statutes the rule of the state courts need not be reviewed. It is practically conceded that the facts and circumstances disclosed surrounding the happening of this accident would ordinarily under proper pleadings warrant the application of the res ipsa loquitur doctrine, but it is argued that the plaintiff in effect waived his right to rely upon that doctrine by pleading specific acts of negligence. In May Department Stores Co. v. Bell, supra, an exhaustive study of this subject was made and it was concluded that under the Missouri rule an allegation of specific negligence deprives plaintiff of the right to rely upon res ipsa loquitur. It must be noted, however, that since the opinion in that case was handed down, the Supreme Court has promulgated, pursuant to congressional authority, rules of civil procedure applicable to Federal courts. In the May Department Stores case we said, 'We assume, without deciding, that it is a rule relating to pleading and practice, which under the provisions of the Conformity Act (section 724, title 28, U.S.C.A.), we are bound to recognize and apply in this case.'

"(5) The Federal court need not therefore concern itself as to the rules of pleading and practice in the state courts. * * *"

In Hord v. National Homeopathic Hospital, D.C., 102 F.Supp. 792, 796, decided February 25, 1952, District Judge Holtzoff considered the award by a jury of $17,000 for wrongful death of a child three days old. In his opinion we find the following:

"(8, 9) Clearly the amount of the verdict in this case is not excessive. It does not shock the Court's conscience. In determining what constitutes a reasonable amount of damages the shrinking purchasing power of the dollar must be borne in

mind. Juries are properly sensitive to this consideration. A day-to-day observation leads the Court to the view that because of this circumstance the size of verdicts in tort cases has increased considerably in the past few years, and properly so. As far back as 1888, a verdict of $1,000 for the death of a four-month old child was upheld in City of Joliet v. Weston, 1888, 123 Ill. 641, 14 N.E. 665; and in the following year a verdict of $2,000 for the death of a one-year old child was sustained in Chicago, Milwaukee & St. Paul Ry. Co. v. Wilson, 1889, 35 Ill.App. 346. Bearing in mind the difference between the value of money in the 1880's and its present value, a verdict over sixty years ago of one or two thousand dollars is equivalent to one for many times that amount as of today.

"In 1906 a verdict for $2,160 for the death of a child less than a year old was sustained in Abby v. Wood, 43 Wash. 379, 86 P. 558.

"In 1924 a verdict for $8,000 for the death of two children,—one two years old and the other seven months old—, was upheld by a Texas court, Schaff v. Young, Tex.Civ.App., 264 S.W. 582, 585.

"More recently a verdict for $5,-000 for the death of a nine months old baby was sustained in Immel v. Richards, 154 Ohio St. 52, 53–56, 93 N.E.2d 474.

"In 1936 a verdict of $6,000 for the death of a twelve-day old baby was upheld in Criss v. Angelus Hospital Ass'n, 13 Cal.App.2d 412, 420, 56 P.2d 1274. The Court stated that it would take judicial notice of the decrease in purchasing power of money. An award of $6,000 in 1936 would be equal to one of over $12,-000 in 1951 or 1952.

"In Couch v. Pacific Gas & Elec. Co., 80 Cal.App.2d 857, 183 P.2d 91, 97, a verdict of $27,500 for the death of a ten-month old child was reduced by the trial judge to $15,-000. The appellate court affirmed the action of the trial judge stating that, 'We cannot say that the sum allowed by the court is excessive.' This decision was rendered in 1947 when the purchasing power of money was somewhat higher than it is today.

"It seems unnecessary to multiply citations on this point. The verdict in this case is clearly within reasonable bounds, certainly as compared with verdicts in other jurisdictions in similar cases.

"The Court is of the opinion that substantial justice has been done.

"Motion for a new trial is denied."

In the course of its affirmance of the judgment, the United States Court of Appeals had this to say, National Homeopathic Hospital v. Hord, D.C.Cir., 204 F.2d 397, 398:

"(1, 2) * * * Of course, 'if in a particular case the verdict is deemed excessive the trial justice or the United States Court of Appeals for the District of Columbia, on appeal of the cause, may order a reduction of the verdict'. Section 16–1201, D.C.Code 1951 (relative to suits for wrongful death). But appellant has not asked us to take action of that sort. And the amount of the verdict here ($17,000) is not so extreme as to cause us to act of our own motion."

The Court now finds the facts and states conclusions of law as follows:

### Findings of Fact

1. That the acts or omissions complained of occurred in the District of Nevada and that at all times mentioned in the complaint, plaintiffs resided in the State of Nevada; that this Court has jurisdiction of the parties and the subject matter of this action by virtue of the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 1402(b), and 2671–2680.

2. That on or about January 30, 1952, at or about 9:45 a. m., William Luns-

ford, acting in the regular course and scope of his employment by the United States Navy, was operating and controlling a motor vehicle, a pick-up truck, for the United States Navy in the defense housing area of the Naval Ammunition Depot known and referred to in the record as being located in Babbitt, Nevada.

3. That at said time and place defendant's employee, William Lunsford, stopped and parked said motor vehicle in the area between Nos. 402 and 404 Enterprise Avenue in said housing area. That the area in and about where said motor vehicle was parked was off of any street or roadway and in a place where children of families residing in said housing area were accustomed to play; that numerous and conspicuous signs of warning of the presence of children were placed and posted in the housing area. That after parking, defendant's employee, William Lunsford, left said motor vehicle for a brief period of time; that upon returning to said vehicle, defendant's employee, without ascertaining or attempting to ascertain if any person was in a position to be struck by said motor vehicle if moved in a forward direction, started said vehicle and caused the same to move in a forward direction. That at the time said motor vehicle was so operated and placed in motion, the said Pamela Hampton was about 9 feet from said motor vehicle and in its path when moved directly forward; that in said forward movement and operation of said motor vehicle by defendant's employee, the child, Pamela Hampton, was struck by said motor vehicle; that as a result of said striking and contact with said motor vehicle, the said Pamela Hampton sustained injuries causing her death shortly thereafter and on the same day.

4. That the said injuries and death of Pamela Hampton were the direct and proximate result of the negligent acts and omissions of the defendant by and through its employee, William Lunsford, in the operation of said motor vehicle as aforesaid, and without any negligence on the part of the said child, Pamela Hampton, or of the plaintiffs, or of the person under whose care said child was at the time.

5. That the plaintiffs, Reuben S. Hampton and Mary H. Hampton, at all times mentioned in the complaint, were and now are husband and wife and the parents of the child, Pamela Hampton, who, at the time of her death, was 25 months of age.

6. That by reason of said accident, resulting injuries and death of their said child, Pamela Hampton, the plaintiffs, Reuben S. Hampton and Mary H. Hampton, have been damaged in the sum of $20,000.

7. That reasonable attorneys' fees for plaintiffs' attorneys for services rendered or which may hereinafter be required to be rendered in this action is the sum of $3,000 to be paid out of but not in addition to the amount of the judgment herein.

### Conclusions of Law

From the foregoing facts the Court concludes as follows:

1. That the negligence of defendant's employee, William Lunsford, while acting within the scope of his employment with the United States Navy, was the proximate cause of the injuries and death of the plaintiffs' child, Pamela Hampton; that no negligence on the part of either of said plaintiffs or of any person entrusted by them with the care of said child contributed to or was the proximate cause of the injuries and death of said child.

2. That plaintiffs, by reason of the injuries and death of said child and their loss sustained thereby, are entitled to judgment in the sum of $20,000 and for their costs incurred herein.

3. That the sum of $3,000 is a reasonable sum to be allowed plaintiffs' attorneys for services rendered or to be hereinafter rendered in this action and said attorneys are entitled to said sum of $3,000 as such fees to be paid out of the judgment to be entered herein.

Let judgment be entered accordingly.