### In re ROCKFORD BASEBALL CLUB, Inc.

### McGAVOCK v. GIOLITTO.

### No. 10716.

United States Court of Appeals
Seventh Circuit.

Feb. 18, 1953.

Francis E. Hickey, Thomas A. Keegan, and Louis R. Gilbert, Rockford, Ill., for appellant.

William D. Knight, L. W. Menzimer and Dale F. Conde, Rockford, Ill., for appellees.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal by the trustee in bankruptcy from an order of the District Court affirming an order of the referee holding valid, as against other creditors, a chattel mortgage executed by the Rockford Baseball Club, Inc., the bankrupt corporation, and dismissing the trustee's petition for review.

The mortgage instrument here involved, signed and acknowledged by officers of the Rockford Baseball Club, bears the date of October 15, 1947, both as to signing and acknowledgment. It was filed for record in the proper office on November 14, 1947. The principal question presented on this appeal is whether the mortgage was filed for record in time to render it valid as against creditors of the Rockford Baseball Club. The applicable Illinois recording statute, Smith-Hurd Ill.Ann.Stat. Ch. 95, § 4, 1950, provides:

"No mortgage * * * of personal property * * * shall be valid as against creditors of the mortgagor * * * unless it shall be deposited for filing or recording in the office of the

recorder of deeds of the proper county within ten days of its execution, and any such mortgage * * * not deposited for filing or recording within ten days of the execution thereof shall be fraudulent and void as to such creditors."

There is no dispute that signing, acknowledgment and delivery are all essential to the execution of a chattel mortgage; and that although, under Illinois law, a chattel mortgage is presumed to have been executed on the date it bears, this presumption may be overcome by parol evidence showing the true date of the execution. Illinois National Bank & Trust Co. v. Holmes, 311 Ill.App. 286, 35 N.E.2d 823.

The appellees, who are claiming that they acquired a lien on the assets of the bankrupt under the chattel mortgage, insist that there was sufficient evidence in the hearing before the referee to sustain a finding by him that the execution of the mortgage here in question was not actually completed until about November 7, 1947, which was within ten days of the date it was recorded; and that the recording of the mortgage was, therefore, timely.

We are unable to determine this question on the record we have before us. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which prescribes the duty of the trial court to "find the facts specially", is made applicable to bankruptcy cases by General Order in Bankruptcy No. 37. General Order No. 47 further provides that "the report of a referee * * * shall set forth his findings of fact and conclusions of law * * *." Here, the referee found only that "the chattel mortgage given by Rockford Baseball Club, Inc. to Peter Giolitto, Trustee, recorded November 14, 1947, * *. * was properly executed and recorded so as to give the chattel mortgagees a prior claim to the assets therein described * * *." The referee made no specific findings of fact as to the date of the execution of the mortgage upon which to base this ultimate conclusion.

This court has many times held that a fair compliance with Rule 52(a) is mandatory. While findings in elaborate detail are neither required nor desirable, "They should be so explicit as to give the reviewing court a clear understanding of the basis of the trial court's decision * * * and to enable it to determine the ground upon which the trial court reached its conclusion." Maher v. Hendrickson, 7 Cir., 188 F.2d 700, 702. The finding that the mortgage "was properly executed and recorded" manifestly does not conform to these requirements. See Smith v. Dental Products Co., 7 Cir., 168 F.2d 516, 518. In Dearborn National Casualty Co. v. Consumers Petroleum Co., 7 Cir., 164 F.2d 332, 333, this court said:

"The court made an ultimate finding of fact * * * but no subsidiary findings of fact were made to indicate upon what findings this conclusion of ultimate fact was based. There must be such subsidiary findings of fact as will support the ultimate conclusion reached by the court."

Such required findings were not made by the referee in the instant case.

It is true that there is evidence in the record which might support findings by the referee that on October 15, 1947, in connection with a loan transaction between the Rockford Baseball Club, Inc., and Illinois Sportservice, Inc., a chattel mortgage was drawn up, designed to secure the payment of promissory notes executed by the Rockford Baseball Club to Illinois Sportservice; that the mortgage instrument, signed and acknowledged under date of October 15, 1947, by officers of the Rockford Baseball Club, was sent to the Buffalo, New York, office of Illinois Sportservice for approval; that it did not contain the name of the mortgagee, because the arrangement was that a trustee to be named as mortgagee would be obtained, and at this time no one had been found who would consent to act as such; that a short time thereafter Illinois Sportservice in Buffalo sent the money to the Rockford Baseball Club, but did not return the mortgage instrument, the execution of which was never completed; that later an unacknowledged copy of the original instrument, which likewise bore the date of October 15, 1947, was

sent to the Buffalo office of Illinois Sport-service with a request that the original be returned so that the name of the mortgagee could be inserted; that instead the unacknowledged copy was returned to the Rockford Baseball Club, along with a letter stating that the acknowledgment should be completed and the mortgage recorded; that this instrument was acknowledged on or about November 7, 1947, before a notary who wrote in the date of October 15, the date the instrument bore on its face; and that this instrument, bearing the name of Peter Giolitto as trustee, was filed for record November 14, 1947.

This version of the facts, however, does not represent the only possible inferences which could have been drawn from the testimony. There were contradictions in the testimony in a number of material respects and the recollections of the witnesses frequently appeared to be vague. The record, therefore, reveals a situation aptly suited to the referee's function, that is, of passing on the credibility of witnesses and the reliability of their testimony, and of then selecting that evidence which to him seemed most reliable as a basis for findings of fact. Since we are not apprised of his subsidiary findings, "we are far asea as to the exact factual basis upon which the judgment was founded." Maher v. Hendrickson, 7 Cir., 188 F.2d 700, 702.

As the Supreme Court stated in Kelly v. Everglades Drainage District, 319 U.S. 415, at pages 421–422, 63 S.Ct. 1141, at pages 1145, 87 L.Ed. 1485:

"It may be that adequate evidence * * * is in the present record. On that we do not pass, for it is not the function of this court to search the record and analyze the evidence in order to supply findings which the trial court failed to make. * * * the nature of the evidentiary findings sufficient and appropriate to support the court's decision * * * is for the trial court to determine in the first instance in the light of the circumstances of the particular case. We hold only that there must be findings * * which are sufficient to indicate the factual basis for the ultimate conclusion."

The order of the District Court is reversed and the cause remanded, with directions that the cause be remanded to the referee in bankruptcy with instructions that the referee make appropriate findings of fact, in conformity with this opinion, and then state his conclusions of law thereon.